**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| FRANZ BUTLER, | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| v. | | **Case No.: PWG-13-883** |
| | * | |
| WILLIAM WINDSOR, *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Franz Butler was near 7-Eleven on Marcy Avenue in Prince George's County with two friends, holding a beverage in a paper bag, when two Prince George's County police officers approached him, searched him, and asked him to sit on the ground.  According to Butler, the beverage was an iced tea and, other than questioning the need to sit down, he obeyed the officers. According to Officers William Windsor and Richard Reynolds, the beverage was malt liquor; Butler was intoxicated and belligerent; and he attempted to flee repeatedly, struck one officer, and refused to sit on the ground.  The officers arrested Butler, employing some degree of force, and he filed this lawsuit, alleging violations of 42 U.S.C. § 1983 and related state tort claims.  I must determine whether to grant summary judgment in favor of the Defendants, Officers Windsor and Reynolds and Prince George's County, on any of Plaintiff's claims,[1] and whether to allow Plaintiff to amend his Complaint to plead satisfaction of the LGTCA[2] notice requirement.

---

[1] Defendants filed a Motion for Summary Judgment and Memorandum of Law in Support, ECF Nos. 24 & 24-2, in response to which Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment and Motion to Amend, ECF No. 25.  Defendants have not filed a reply with

I will grant Plaintiff's unopposed Motion to Amend, provided that the facts support such an amendment, and I will deny Defendants' Motion for Summary Judgment on Counts II–VI and IX and X, insofar as it is based on Plaintiff's failure to comply with the LGTCA. But, I will grant Defendants' Motion on the claims against the County in Counts II, III, IV, IX and X, on the basis of governmental immunity and, because Plaintiff failed to state a *Monell*[3] claim, I will grant Defendants' Motion as to Count VII and direct Plaintiff to submit briefing on the viability of Counts I and VIII against the County. Because genuine disputes exist as to material facts, I will deny Defendants' Motion on all other grounds as to all claims against the Defendant Officers and with regard to the claim against the County in Count V.

Thus, Counts V and VI and, if the additional briefing provides a basis, Counts I and VIII, are the only counts that remain against the County. Further, the denial of summary judgment as to the claims against the Defendant Officers in Counts II–VI and IX and X and the claims against the County in Counts V and VI is without prejudice to submission of a second motion for summary judgment within thirty days of Plaintiff's Amended Complaint, if he files one, or thirty days from the date of this Memorandum Opinion, if Plaintiff does not amend. The second motion for summary judgment may rest only on Plaintiff's failure to comply with the LGTCA, should Defendants have support for such an assertion.

---

regard to the summary judgment motion or an opposition to Plaintiff's Motion to Amend, and the time for doing so has passed. *See* Loc. R. 105.2(a). A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated in this Memorandum Opinion, Defendants' Motion for Summary Judgment IS GRANTED IN PART AND DENIED IN PART, and Plaintiff's Motion to Amend IS GRANTED.

[2] Local Government Tort Claims Act, Md. Code Ann., Cts & Jud. Proc. §§ 5-301 – 5-304.

[3] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

## I.     BACKGROUND

The parties' recollections of the events of June 7, 2012 differ greatly.  In support of their version of the events on June 7, 2012, Defendants cite the Statement of Probable Cause that Officer Reynolds filed, Defs.' Mem. Ex. A, ECF No. 24-1, which describes Plaintiff as holding a can of alcohol and intoxicated to the point that he was "stumbling" and "bumped into another citizen." *Id.* at 1.  Additionally, Officer Reynolds reported that Plaintiff was so belligerent that he refused to stay for a pat down search, "struck [Officer Reynolds] on the chest," attempted to flee repeatedly, and "refused all orders" to sit on the ground. *Id.* at 1–2; *see also* Reynolds Dep. 42: 1-5, 47:7-15, Pl.'s Opp'n Ex. 1, ECF No. 25-1.  But, in reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).

In the light most favorable to Plaintiff, on the date in question, he "got a bag of chips and a soda to drink" at 7-Eleven and started "walking up the hill on Marcy Avenue" with a friend and "someone else."  Butler Dep. 45:4-8, Defs.' Mem. Ex. B, ECF No. 24-1.  Plaintiff testified that he had Arizona Iced Tea, not alcohol, in the paper bag.  *Id.* at 51:1–20.  He recalled, *id.* at 46:1–20:

> [T]he police came out of nowhere and they approached me and asked me for my ID and [Officer Reynolds] told me to go towards the car and to put my hands on the car, on the hood and he searched me, and I asked him what he – why he pulled me over and he said – I can't remember what he said, and after he searched me and pat me, he told me to sit down on the ground … . I felt that I was – I felt that I had no business being pulled over.  They told me sit on the ground.  I felt I didn't need – I shouldn't of had to sit on the ground and he asked again to sit on the ground and he said it – he said it more, more, meaner.  I said, "For what?" And I remember I said," For what?" And I guess I didn't sit on the ground fast enough

and he came to me and he forced me and tackled me on the ground and another police officer [Officer Windsor] came out of nowhere and he jumped me, and he jumped me and I went to the hospital.

He testified that he refused to "get on the ground," but said that it was not true that he ran or hit the officer. *Id.* at 56:2–21.

Officer Reynolds acknowledged that, when Plaintiff repeatedly attempted to flee, he "grabbed [Butler] by the arm" and "attempted an arm bar take down," which caused Plaintiff to fall, and later brought Plaintiff to the ground again. Stmt. 1–2. Although Officer Reynolds stated that Plaintiff "continued to struggle to break free" and that Officer Windsor "assisted in getting the arrested into custody," *id.* at 2, he did not describe the force used in effecting the arrest. Plaintiff claims that they "kicked, punched, and generally assaulted" him. Compl. ¶ 9, ECF No. 2. Specifically, he alleges that they "intentionally, maliciously, willfully, wantonly, and recklessly struck the Plaintiff in the face, head, arms, legs, stomach, back and neck." *Id.* ¶ 20.

## II.   DISCUSSION

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of

evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*

### A.  Count VII – Prince George's County

Count VII is a § 1983 claim against the County only.  Compl. 8.  Defendants contend that they are entitled to summary judgment on this count because "Plaintiff failed to sufficiently plead his claim for an unconstitutional pattern or practice," relying instead on "speculative statements and legal conclusions," and, despite the completion of discovery, Plaintiff has no "fact-specific averments . . . establishing his cause of injury" to supplant the "bald allegations advanced by Plaintiff in his Complaint."  Defs.' Mem. 4–5.  Plaintiff insists that Paragraphs 37–39 of his Complaint "are sufficient[] to support a §1983 claim against the Defendant Prince George's County, Maryland."  Pl.'s Opp'n 4–5.  Paragraphs 37–39 state:

> Paragraph 37. Prior to June 7, 2012, the Prince George's County Police Department which is owned operated and otherwise controlled by Prince George's County, Maryland developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Prince George's County, Maryland, which caused the violation of the Plaintiff's rights in this action.
>
> Paragraph 38. It was the policy and/or custom of the Prince George's County Police Department to inadequately and improperly investigate citizen complaints of police misconduct, and Prince George's County, Maryland instead tolerated acts of misconduct.
>
> Paragraph 39. It was the policy and or custom of the Prince George's County Police Department to inadequately supervise and train its police officers, including the Defendant Officers Reynolds and Windsor, thereby failing to adequately discourage further constitutional violations on the part of its police officers. Prince George's County, Maryland and the Prince George's County Police Department did not require appropriate in-service training or retraining of officers who were known to have engaged in police misconduct.

The County, as a unit of local government, is a "'person[]'" subject to suit under 42 U.S.C. § 1983, as stated in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978). *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999). But, "[u]nder *Monell*, a municipality's liability "arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)); *see Rockwell v. Mayor of Balt.*, No. RDB-13-3049, 2014 WL 949859, at *11 (D. Md. Mar. 11, 2014) (citing *Walker*). Thus, a *Monell* claim is a form of § 1983 action under which a municipality, such as the County, is liable "where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom." *Smith v. Ray*, 409 F. App'x 641, 651 (4th Cir. 2011). The government's policy or custom must have "played a part in the deprivation" underpinning the plaintiff's claim. *DiPino*, 729 A.2d at 369. The policy or custom may be "an express policy, such as a written ordinance or regulation"; a decision by "a person with final policymaking authority;" "an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens;" or "a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted)).

To state a *Monell* claim, a plaintiff must allege that "'(1) the municipality [had] actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there [was] a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage.'" *Rockwell*, 2014 WL 949859, at *11 (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation

marks omitted)).  The plaintiff also must allege that there was "a 'direct causal link' between the policy or custom and the deprivation of rights."  *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386–86 (1989)).  Notably, "'there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice,'" because "[a] municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees.'" *Smith*, 409 F. App'x at 651 (quoting *Lytle v*, 326 F.3d at 473).

Plaintiff's threadbare count cannot survive more careful scrutiny.  And, while Plaintiff has completed discovery and responded to Defendants' motion, he has not offered any evidence to bolster his claims.  While he claims that the County "developed and maintained policies or customs exhibiting deliberate indifference," such as "the policy and/or custom . . . to inadequately and improperly investigate citizen complaints of police misconduct" and "the policy and or custom . . . to inadequately supervise and train its police officers," he fails to describe the alleged policies or customs beyond the boilerplate, conclusory statements quoted above.  *See* Compl. ¶¶ 37–39.  Moreover, Plaintiff only alleges one instance of allegedly unconstitutional conduct in his Complaint: the police officers' acts directed at him on June 7, 2012.  *See id.* ¶¶ 7–15.  Thus, he only has alleged an "isolated incident" for which the County has no liability, as it is a far cry from the 'numerous particular instances of unconstitutional conduct" necessary "to establish a custom or practice." *Lytle*, 326 F.3d at 473; *see Smith*, 409 F. App'x at 651 (affirming summary judgment in favor of city where plaintiff "failed to present any convincing evidence that a policy or custom ha[d] developed regarding the use of excessive force, sexual assaults or any other unconstitutional actions by officers"); *Walker*, 575 F.3d at 431 (affirming district court conclusion that "appellants 'failed to make any allegations in their complain in regards to the existence of the County's policy, custom, or practice, therefore failing

to plead' a viable *Monell* claim"). Therefore, Defendants' Motion for Summary Judgment IS GRANTED as to Count VII. *See Lytle*, 326 F.3d at 473; *Smith*, 409 F. App'x at 651, *Rockwell*, 2014 WL 949859, at *11.

### B.  Counts I and VIII – Prince George's County

Defendants move for summary judgment "in their favor as to all counts found within the Plaintiff's Complaint." Defs.' Mem. 19. Yet, they do not address Counts I and VIII as they pertain to the County, even though Plaintiff names all Defendants in both of these counts. Count I, like Count VII, is a § 1983 claim, for which Plaintiff alleges that the Defendant Officers "violated [his] clearly established and well-settled federal constitutional rights," including the right to "[f]reedom from the unreasonable seizure of his person," and the right to "[f]reedom from the use of excessive, unreasonable, and unjustified force against his person." Compl. ¶¶ 15 & 19. In Count VIII, Plaintiff claims a "[v]iolation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person." *Id.* ¶¶ 14 & 42. Specifically, Plaintiff alleges that "without provocation, probable cause, reasonable or articulable suspicion, or a good faith basis, the Defendant Officers Reynolds and Windsor, individually and as agents of the Prince George's County Police Department, used excessive force in seizing the Plaintiff without a warrant and/or probable cause." Compl. ¶ 42. Section 1983 "provides the mechanism for civil enforcement of federal constitutional violations." *Rockwell*, 2014 WL 949859, at *8 n.10 (citing *DiPino*, 729 A.2d at 371). Thus, Count VIII is merely a restatement of the claim in Count I, and I will analyze them together. *See id.*

Unlike in Count VII, Plaintiff does not include even conclusory allegations of a policy or custom in Count I or VIII. *See* Compl. 4. Thus, Plaintiff fails to state a claim against the County

8

in Counts I and VIII.  *See Smith*, 409 F. App'x at 651.  This Court "may, on its own initiative, dismiss a civil complaint for failing to state a claim." *Saifullah v. Johnson*, 948 F.2d 1282, 1991 WL 240479, at *1 (4th Cir. 1991) (citing 5A C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1357 at 301 (2d ed. 1990)).  The Court also may grant summary judgment *sua sponte*.  *Id*. (citing  *U.S. Dev. Co. v. Peoples Federal Sav. & Loan Assoc.*, 873 F.2d 731, 735 (4th Cir. 1989)). But, prior to doing so, the Court must afford the plaintiff "notice and an opportunity to be heard."  *Id*.; *see U.S. Dev. Co.*, 873 F.2d at 735.

Because the County did not address the viability of the claims against it in Counts I and VIII, Plaintiff should have the opportunity to address whether he has stated claims against the County in Counts I and VIII.  *See Saifullah*, 1991 WL 240479, at *1; *U.S. Dev. Co.*, 873 F.2d at 735.  Therefore, Plaintiff may file a supplemental brief on this issue, not to exceed ten pages, by June 30, 2014.  Defendants may file a reply by July 14, 2014.  If Plaintiff does not file a brief on or before June 30, 2014, I will grant summary judgment in the County's favor on Counts I and VIII, for the reasons stated in this Memorandum Opinion.

### C.  Counts I and VIII – Defendant Officers

Defendants argue that Counts I and VIII "must be dismissed as to Defendants Officers Reynolds and Windsor because the officers are entitled to qualified immunity."  Defs.' Mem. 6. They contend that "the Defendant Officers' decision to arrest the Plaintiff was 'objectively reasonable,' based upon Plaintiff's erratic behavior and disobedience of their orders," and "[t]his type of decision making entitles the officers to qualified immunity on each of the Plaintiff's federal claims, inasmuch as they acted upon an articulable suspicion in initially stopping Plaintiff and upon probable cause in arresting him, after he disobeyed their lawful orders and then fought with Officer Reynolds."  *Id.* at 8.  Insisting that "[i]t is inappropriate for a court to grant

summary judgment for an excessive force claim when there are disputes regarding the degree, or existence, of the alleged use of excessive force," Plaintiff argues against summary judgment on Counts I and VIII because the parties dispute the excessiveness of force that the Defendant Officers used.  Pl.'s Opp'n 6.  Plaintiff also contends that the "Officers['] actions were not objectively reasonable," even relying on "[t]he Defendant's own version of the 'Undisputed Facts.'"  *Id.*

"[T]he defense of qualified immunity . . . protects law enforcement agents from federal claims when they act in objectively reasonable reliance on existing law."  *Rockwell*, 2014 WL 949859, at *8 n.10.  Thus, police officers are not liable under § 1983 unless "'(1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right.'"  *Streater v. Wilson*, ---- F. App'x ----, 2014 WL 1345879, at *2 (4th Cir. 2014) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations omitted)).   Put another way, even if a plaintiff proves that an officer violated certain constitutional rights, that officer may still be entitled to qualified immunity "if a reasonable person in the officer's position 'could have failed to appreciate that his conduct would violate those rights.'"  *McDonnell v. Hewitt-Angleberger*, No. WMN-11-3284, 2013 WL 4852308, at *3 (D. Md. Sept. 9, 2013) (quoting *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991))).  Defendants carry the burden of proving qualified immunity.  *Id.* (quoting *Meyers*, 713 F.3d at 731).

Here, Defendants' acts allegedly violated Plaintiff's right to be free from excessive force. Compl. ¶¶ 14 & 42–44.  "'Whether an officer has used excessive force is judged by a standard of objective reasonableness.'"  *Streater*, 2014 WL 1345879, at *2 (quoting *Clem v. Corbeau*, 284

F.3d 543, 550 (4th Cir. 2002)). The Court considers "'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.'" *Id*. (quoting *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996)).

"The right to be free from excessive force stemming from a beating during an arrest was clearly established at the time of Plaintiff's alleged assault." *Brown v. Prince George's County, MD*, No. DKC-07-2591, 2012 WL 3012573, at *8 n.18 (D. Md. July 20, 2012) (citing *Graham*, 490 U.S. at 395–96.). *Brown*, 2012 WL 3012573, is informative. There, Brown brought, *inter alia*, a § 1983 excessive force claim against various police officers, alleging that he was beaten severely when they chased and tackled him; he claimed that he did not know they were police officers when he fled from them. *Id.* at *1–2. According to the officers, who moved for summary judgment on the ground of qualified immunity, they announced themselves as officers and directed Brown to stop before chasing him, and the injuries occurred because the officer who tackled Brown unknowingly landed, with Brown, on a concrete slab which Brown's head hit. *Id.* at *2. This Court observed that, while the defendant officers emphasized that, in their view, they had probable cause for Brown's arrest, "[w]hether probable cause existed for his arrest … does not answer the question of whether the Defendant officers used excessive force by purportedly beating him when effectuating that arrest." *Id.* at *7. The Court also stated that the officers "misse[d] the mark" in arguing that they were entitled to qualified immunity because "'a reasonable officer . . . would not believe that the pursuit and arrest of a fleeing individual . . . engaging in an illegal drug transaction was unlawful,'" because the issue was not whether the officer used excessive force in tackling Brown but rather "whether the Defendant officers displayed excessive force by beating Plaintiff following the tackle," as Brown claimed. *Id.* at *8 (citation omitted). Noting that the jury would have to make credibility determinations to decide

the facts of the case, as "numerous disputes of material fact remain at this stage of the case," the Court concluded that summary judgment was not appropriate. *Id.* at *7.

Similarly, here, the issue is not the propriety of the arrest but rather whether excessive force was used in effecting that arrest. *See id.* at *7–8. To determine the availability of qualified immunity, I take the facts alleged "'in the light most favorable to the party asserting the injury.'" *Meyers v. Baltimore Cnty.*, --- F. Supp. 2d ----, 2013 WL 5934097, at *4 (D. Md. Nov. 1, 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009)). Viewed in the light most favorable to Plaintiff, on the facts before me, it is clear that some force was necessary to detain Plaintiff, as he would not sit on the ground of his own accord when ordered. But, neither the amount of force reasonable nor the amount of force used is apparent, as numerous material facts are in dispute and others have not been offered to the Court at this time. Therefore, summary judgment on the ground of qualified immunity is not appropriate on the present record. Defendants' Motion for Summary Judgment on Counts I and VIII IS DENIED as to the Defendant Officers.

### D.  Counts II, III, IV, V, VI, IX, and X – All Defendants

*1.  Local Government Tort Claims Act – All Defendants*

Counts II, III, IV, IX, and X allege the state tort claims of assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, and malicious prosecution against all Defendants. Compl. 4, 5, 6 & 9–10. Counts V and VI allege state constitutional torts, namely violations of Articles 24 and 26 of the Maryland Declaration of Rights, as to all Defendants. *Id.* at 6 & 7. Defendants contend that the Court should dismiss all of these state law claims against all of the Defendants because Plaintiff failed to comply with the notice and

pleading requirements of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann.,

Cts & Jud. Proc. §§ 5-301 – 5-304.  Defs.' Mem. 8–9.

Under the LGTCA, "a local governmental entity is liable, up to $200,000 per person,

$500,000 for all claims, for its own tortious conduct. It also is liable for tort judgments for

compensatory damages rendered against its employees, if the judgment arises from tortious

conduct committed within the scope of the employment." *DiPino v. Davis*, 729 A.2d 354, 370–

71 (Md. 1999).  The LGTCA applies to state constitutional torts, as well as common law torts.

*Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999).  However, to sue a local government or

its employees for unliquidated damages, a plaintiff must provide written notice of the claim

within 180 days after the injury giving rise to the suit.  Cts. & Jud. Proc. § 5-304(b).

Alternatively, a plaintiff may substantially comply with the notice requirements. *Huggins v.

Prince George's Cnty., Md*., 683 F.3d 525, 538 (4th Cir. 2012).  Additionally,

> the LGTCA creates a procedural obligation that a plaintiff must meet in filing a
> tort action. A plaintiff must not only satisfy the notice requirement strictly or
> substantially, but also plead such satisfaction in his/ her complaint. If a plaintiff
> omits this step, he or she is subject to a motion to dismiss, for instance, based on a
> failure to state a claim upon which relief can be granted

*Hansen v. City of Laurel*, 25 A.3d 122, 137 (Md. 2011).

Plaintiff concedes that he did not "strictly comply" with § 5-304(b).  Pl.'s Opp'n 10–11.

And, he does not address whether he substantially complied with the notice requirement.  *See id.*

Rather, he argues that, because Defendants "provide no indication" of prejudice from his failure

to comply with the LGTCA, the Court should exercise its discretion not to dismiss Plaintiff's

Complaint on this ground.  *Id.*  Plaintiff requests that the Court, instead, grant Plaintiff's

"'Motion to Amend the Complaint' to cure the deficiency alleged by the Defendants in their

Motion for Summary Judgment.'"  *Id.* at 11.  Defendants do not oppose Plaintiff's Motion, and

therefore it IS GRANTED.[4]  Defendants' Motion for Summary Judgment on Counts II, III, IV, V, VI, IX, and X IS DENIED, insofar as it relies on Plaintiff's failure to comply with the LGTCA.[5]

### 2. Governmental Immunity – Prince George's County

The County asserts governmental immunity as a defense to Counts II, III, IV, IX, and X. Defs.' Mem. 10–11.   Governmental immunity is a doctrine that "is 'deeply ingrained in Maryland law' and may not be waived without express or implied statutory authorization." *Crouch v. City of Hyattsville*, No. DKC-09-2544, 2010 WL 3653345, at *4 (D. Md. Sept. 15, 2010) (quoting *Nam v. Montgomery Cnty.*, 732 A.2d 356, 362 (1999)); *see DiPino*, 729 A.2d at 370.   Under this doctrine, a municipality is "immun[e] from common law tort suits for governmental, as opposed to proprietary, acts."   *Crouch*, 2010 WL 3653345, at *4. Significantly, "'[t]he operation of a police force is a governmental function.'"   *Id.* (quoting *Hector v. Weglein*, 558 F. Supp. 194, 206 (D. Md. 1982) (citations omitted)).   And, working "as a City police officer . . . purporting to enforce the State criminal law . . . . is quintessentially governmental in nature."  *DiPino*, 729 A.2d at 370.  "Thus, a city is immune as to common law

---

[4] Whether to grant a motion for leave to amend is within this Court's discretion, *Foman v. Davis*, 371 U.S. 178, 182 (1962), and "[t]he court should freely give leave [to amend] when justice so requires."   Fed. R. Civ. P. 15(a)(2).   Still, when a plaintiff seeks leave to amend after the deadline established in the scheduling order, as Butler does here, *see* ECF No. 8, the plaintiff must have good cause for its delay. *See* Fed. R. Civ. P. 16(b); *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003).   Here, significantly, not only do Defendants not oppose Plaintiff's Motion, but also there is no indication that Plaintiff's delay will prejudice Defendants.  *See Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (considering prejudice to the non-moving party as a factor in determining whether the moving party had good cause for its delay).   Moreover, Plaintiff seeks leave to amend to fulfil a technical requirement, rather than to make a substantive amendment, such that denying leave where there is no prejudice would be to exalt form over substance.  *See* Fed. R. Civ. P. 1.

[5] Nonetheless, as discussed in the next subsection, the claims against the County in Counts II, III, IV, IX and X will not survive Defendants' Motion for Summary Judgment on the ground of governmental immunity.

tort claims asserted against it based on torts committed by its police officers." *Crouch*, 2010 WL 3653345, at *4. Because Counts II, III, IV, IX, and X allege claims against the County based on torts committed by County police officers acting in their capacity as police officers, the County has governmental immunity to these claims. *See id.*; *DiPino*, 729 A.2d at 370. Defendants' Motion IS GRANTED as to these claims against the County.[6] *See* Fed. R. Civ. P. 12(b)(6).

### 3. *Legal Justification – Defendant Officers*

In Counts III and IV, for false arrest and false imprisonment, Plaintiff claims that the Defendant Officers arrested him "without provocation, probable cause, reasonable or articulable suspicion, or a good faith basis," while he "followed the conflicting directions of the officers at all times and was not violent towards the Defendants Reynolds and Windsor in any way." Compl. ¶¶ 23–24 & 27–30. The Defendant Officers argue that they "are entitled to judgment as a matter of law on Plaintiff's claims of false arrest and imprisonment because their actions were objectively reasonable and Plaintiff's arrest was based upon probable cause." Defs.' Mem. 13. Arguing that "an arrest based on probable cause provides the legal justification for the lawful detention of the suspect," they maintain that they "had abundant justification for arresting Plaintiff." *Id.* Additionally, they insist that, after observing "Plaintiff and his friends in public consuming what he thought to be alcohol based upon his training and experience," it was objectively reasonable for Officer Reynolds to approach Plaintiff and the two men with him; to "conduct[] a *Terry* pat down of their outer clothing"; to order Plaintiff "to sit on the ground, to minimize any potential threat he might pose," given that the police officer was outnumbered three to one; to order Plaintiff again "to sit on the ground" after he refused"; and then to "tackle[] Plaintiff." *Id.* at 14.

---

[6] This ruling does not pertain to the claims against the Defendant Officers in these counts, which I will discuss in the following subsections.

Plaintiff counters that "Defendants' arguments regarding the presence of probable cause are misplaced." Pl.'s Opp'n 15. In this regard, Plaintiff is correct. False arrest and false imprisonment have the same elements, namely: (1) "'the deprivation of the liberty of another,'" (2) "'without consent,'" and (3) "'*without legal justification*.'" *Prince George's County v. Longtin*, 19 A.3d 859, 893 (Md. 2011) (quoting *Heron v. Stradler*, 761 A.2d 56, 59 (Md. 2000) (emphasis added in *Longtin*)). Because it is undisputed that Defendants deprived Plaintiff of his liberty without his consent, *see* Defs.' Mem. 13, I will focus on the third element. Legal justification for a warrantless *felony* arrest exists where a police officer "'has probable cause to believe that a felony has been committed, and that the arrestee perpetrated the offense.'" *Id.* (quoting *Ashton v. Brown*, 339 Md. 70, 120, 660 A.2d 447, 472 (1995) (citations omitted)). But, legal justification for a warrantless arrest *for a misdemeanor*, in contrast, requires that the "misdemeanor was actually committed in a police officer's view or presence." *Ashton*, 660 A.2d at 472. Thus, "probable cause is not a defense in an action for false imprisonment based upon a police officer's warrantless arrest for the commission of a non-felony offense." *Id.* Therefore, the question is not one of probable cause but rather whether the undisputed facts show that Defendants had legal justification for depriving Plaintiff of his liberty without his consent. *See Longtin*, 19 A.3d at 893.

According to Plaintiff, "there is no evidence the Plaintiff was acting erratically nor disobeying the lawful order of a police officer" to provide legal justification for his arrest. Pl.'s Opp'n 15. In this regard, Plaintiff is wrong. The Statement of Probable Cause that Officer Reynolds filed recounts the following interaction between Plaintiff and the Defendant Officers: Plaintiff, whom Officer Reynolds described as "unsteady on his feet," with "glazed over eyes and slurr[ed] … speech" and "a very distinct odor of alcohol," was "loitering to the side of an

apartment building" with two other men and "drinking from a can which was concealed in a brown paper bag" when Officer Reynolds observed him. Officer Reynolds knew the use of a brown paper bag to be "a common way to try and conceal alcoholic beverages while in public view." Officer Reynolds observed Plaintiff as he "stumbl[ed]" and "bumped into another citizen," at which point Officer Reynolds asked Plaintiff "what he was drinking" and "retrieved [Plaintiff's] alcoholic beverage from his hand which was a 24oz steel reserve malt liquor can." Officer Reynolds directed Plaintiff "to stay where he was" so that the police officer could "conduct a pat down search for officer's safety," but Plaintiff "began to walk away." When Plaintiff "refused" to stop walking away, Officer Reynolds "grabbed [him] by the right arm, and attempted to escort him back to the scene of the original stop." In response, Plaintiff "pulled away from th[e] officer and struck him on the chest" and "then began to flee the scene." Officer Reynolds "advised [Plaintiff] that he was under arrest and directed him "to get on the ground," which Plaintiff "refused to do." Officer Reynolds "attempted an arm bar take down," Plaintiff "fell to the ground" but still "refused" to comply with Officer Reynolds's commands and struck his chest again in a second "attempt to flee." Officer Reynolds brought Plaintiff to the ground again, but Plaintiff still "refused all orders" to "place his hands behind his back," and struggle ensued. Officer Windsor "arrived on scene and assisted in getting [Plaintiff] into custody." Additionally, Plaintiff admits that he refused to "get on the ground" and questioned the officer's directions. Butler Dep. 46:1–20, 56:2-21. Under this set of facts, Plaintiff committed, at a minimum, the misdemeanors of second degree assault[7] and disorderly conduct[8] in Officer

---

[7] "Under Maryland common law, an assault of the battery variety is committed by causing offensive physical contact with another person." *Nicolas v. State*, 44 A.3d 396, 406–07 (Md. 2012). The Maryland Criminal Pattern Jury Instructions provide the following elements for assault: "(1) the defendant caused offensive physical contact with, or harm to, the victim; (2) the contact was the result of an intentional or reckless act of the defendant and was not accidental;

Reynold's presence, such that the Defendant Officers had legal justification for arresting him. Yet there also is evidence that Plaintiff was not drinking alcohol, did not attempt to flee, and did not hit the officer. *See* Butler Dep. 46:1–20, 51:1–20, 56:2–21. And, in the light most favorable to Plaintiff, these are the facts I must consider. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Therefore, there is a genuine dispute of material facts and Defendants are not entitled to summary judgment on Count III or IV. *See* Fed. R. Civ. P. 56(a).

### 4. Probable Cause – Officer Defendants

Plaintiff claims in Count X – Malicious Prosecution, that Defendants, without probable cause, "filed criminal charges in the District Court for Prince George's County, Maryland against the Plaintiff for second degree assault, and two counts of disorderly conduct," and the charges were *nolle prossed*. Compl. ¶¶ 48–50. "The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron v. Stradler*, 761 A.2d 56, 59 (Md. 2000) (citing *DiPino v. Davis*, 729 A.2d 354, 373 (Md. 1999); *Montgomery Ward v. Wilson*, 664 A.2d 916, 922 (1995)). According to Defendants, Plaintiff "cannot satisfy element[]

---

and (3) the contact was not consented to by the victim or was not legally justified." *Id.* at 407 (quoting MPJI–Cr 4:01 (2007 Supp.)).

[8]     The elements of disorderly conduct, proscribed by [Md. Code Ann., Crim. Law] § 10–201(c)(2) and (3), are well settled. Under subsection (c)(2), the defendant must willfully, in a public place or public conveyance and in the actual presence of other persons, act in a disorderly manner to the disturbance of the public peace of those other persons. Subsection (c)(3) requires that the defendant willfully fail to obey a reasonable and lawful order of a law enforcement officer, made to prevent a disturbance of the public peace.

*Att'y Grievance Comm'n of Md. v. Mahone* , 76 A.3d 1198, 1210 (Md. 2013).

two," because he has the burden of demonstrating lack of probable cause, and his allegation of probable cause is conclusory.  Defs.' Mem. 15–16.

"Probable cause . . . 'is a nontechnical conception of a reasonable ground for belief of guilt.'" *DiPino v. Davis*, 729 A.2d 354, 361 (Md. 1999) (quoting *Collins v. State*, 589 A.2d 479, 481 (1991)).  "It is defined 'in terms of facts and circumstances "sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense."'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting, in part, from *Beck v. Ohio*, 379 U.S. 89, 91 (1964))); *see Exxon Corp. v. Kelly*, 381 A.2d 1146, 1151 (Md. 1978).  Plaintiff contends that his own deposition testimony that he "complied with the Officers['] directive up to the point where he was tackled," even though he did question why he should sit on the ground, is sufficient to show that Defendants lacked probable cause.  Pl.'s Opp'n 18.  The evidence discussed above shows that Plaintiff has set forth sufficient evidence to support a lack of probable cause to arrest Plaintiff for second degree assault or disorderly conduct, while Defendants have set forth sufficient evidence to show that they had probable cause to arrest Plaintiff for both of these misdemeanors.  Thus, a genuine dispute exists as to material facts.

Defendants also argue that Plaintiff "has failed to allege sufficient facts necessary to support element four" because, "beyond merely making this conclusory and unsubstantiated assertion that the Defendant Office[r]s acted with malice in prosecuting him, the Plaintiff offers no factual support whatsoever for []his allegation of malice."  Defs.' Mem. 16.  Plaintiff asserts that, because he has demonstrated a lack of probable cause, he also has established malice, which "'may be inferred from a lack of probable cause.'" Pl.'s Opp'n 21–22 (quoting *Exxon Corp. v. Kelly*, 381 A.2d 1146, 1152–53 (Md. 1978)).  In this regard, *Exxon Corp.*, 381 A.2d at 1152–53 is informative.

At trial in *Exxon Corp.*, the jury found for Kelly, a former Exxon employee who sued Exxon for malicious prosecution after Exxon, in cooperation with the Maryland State Police, investigated thefts at one of its terminals and swore out a warrant for Kelly's arrest. *Id.* at 1148. Exxon appealed, contending that the *nolle prosequi* should not have been considered as evidence of lack of probable cause and that "it was entitled to a directed verdict on the ground that Kelly failed to produce legally sufficient evidence either of lack of probable cause or of malice." *Id.* at 1149, 1151. The Court of Appeals agreed that, under the facts of the case before it, the *nolle prosequi* was not evidence of lack of probable cause. *Id.* at 1149. But it concluded that "a new trial [wa]s necessary because, even absent use of the nolle prosequi, there remain[ed], contrary to Exxon's contention, sufficient conflicting evidence to be resolved by a jury relative to the existence of probable cause and malice." *Id.*

Considering whether the trial court should have submitted the question of malice to the jury, the appellate court reasoned:

> It is true that since malice and lack of probable cause must concur in order to maintain an action for malicious prosecution, *see Boyd v. Cross*, 35 Md. 194, 196–97 (1872), the verdict cannot stand, whatever may be the conclusion as to probable cause, absent a showing of malice. As our predecessors have observed, however, "of these two indispensable elements the want of probable cause is the more important, because if it be established by the proof, malice may be inferred." *Owens v. Graetzel*, 149 Md. 689, 696, 132 A. 265, 267 (1926) (emphasis added). We reiterated this principle in *Wesko v. G.E.M., Inc.*, 272 Md. 192, 197-98, 321 A.2d 529, 532-33 (1974), explaining that the inference is merely a permissible one, "sometimes loosely characterized as prima facie evidence, subject to negation by proof that there was no actual malice on the defendant's part." *Id.* at 197, 321 A.2d at 532 (citations omitted). Since we have repeatedly stated that the question of malice . . . "unlike probable cause, is a question for the jury," *Banks v. Montgomery Ward & Co.*, 212 Md. 31, 42, 128 A.2d 600, 606 (1957); *Jannenga v. Libernini*, 222 Md. 469, 474, 160 A.2d 795, 798 (1960) (citing cases), and since, as we have just discussed, "lack of probable cause may give rise to an inference of malice, sufficient to carry the question to the jury," W. Prosser, [*Law of Torts*] § 119, at 849, it follows ineluctably that if the jury is permitted under the evidence here to find a lack of probable cause, as we have already decided it may, it may also, if it chooses, infer the existence of malice.

*Id.* at 1152–53 (footnote and some citations omitted).  The Court of Appeals concluded that "it would have been error to withdraw the question of malice from consideration by the jury." *Id.* at 1153.

Similarly, here, because the jury could find a lack of probable cause, it also could infer malice.  *See id.* at 1152–53.  Thus, on the malicious prosecution claim, there is a genuine dispute of material fact and, in the light most favorable to the Plaintiff, the evidence shows that the Officer Defendants are not entitled to judgment as a matter of law.[9]  *See* Fed. R. Civ. P. 56(a); *Exxon*, 381 A.2d at 1152 ("[S]ince the facts relied upon to constitute probable cause are in dispute, the jury must determine them.").

### 5. *Failure to State a Claim*

Count IX is for intentional infliction of emotional distress ("IIED").  "In Maryland, the tort of intentional infliction of emotional distress is 'rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Bestkoff v. Bank of America, N.A.*, No. CCB-12-1998, 2012 WL 4960099, at *5 (D. Md. Oct. 15, 2012) (citing *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) (citation omitted)).  To plead this cause of action, a plaintiff must show that (1) the defendants' conduct was "'intentional or reckless,'" as well as "'extreme and outrageous'"; (2) there was "'a causal connection between the wrongful conduct and the emotional distress'"; and (3) the emotional distress was "'severe.'" *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).  "'Extreme and outrageous'" conduct is such that is "'"so outrageous in character, and so extreme in degree, as to go beyond all possible

---

[9] As discussed in Part II.D.2, *supra*, Defendants' Motion is granted on this claim as it pertains to the County, on grounds of governmental immunity.

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."'" *Id.* (quoting *Harris*, 380 A.2d at 614 (internal citation omitted)).

Plaintiff claims that the Defendant Officers "acted intentionally and recklessly with a deliberate disregard of the high probability that Plaintiff would suffer severe emotional distress," when they "knew or should have known that the Plaintiff would suffer severe emotional distress as a direct and proximate result of their unlawful conduct," and "Plaintiff did suffer severe emotional distress as a direct and proximate result of the Defendant's [*sic*] actions in cursing and battering the Plaintiff." Compl. ¶¶ 45–47. In Defendants' view, they "acted within the parameters of the Fourth Amendment in apprehending the Plaintiff, inasmuch as they acted upon an articulable suspicion in initially stopping him" and "acted with probable cause in arresting Plaintiff." Defs.' Mem. 18–19. On that basis, they insist that they are entitled to summary judgment because such their conduct was neither extreme nor outrageous. *Id.* Plaintiff counters that, because Officer Reynolds "tackled Plaintiff to the ground for simply asking a question, . . . one can easily conclude . . . that the Defendant Reynolds intended to cause the Plaintiff harm or should have known that using excessive force to subdue someone that is not under arrest would cause harm." Pl.'s Opp'n 22. He insists that, "[i]nasmuch as the Plaintiff was not under arrest and had complied with Defendant Officer['s] orders[,] to resort to tacking and assaulting the Plaintiff when he inquired about being given an unlawful command (to sit on the ground) is arguably outrageous and extreme under the circumstances," because "Plaintiff had not committed a crime and posed no threat to the Defendant Officer." *Id.* at 22–23.

Once again, the same factual disputes that preclude summary judgment on the false arrest, false imprisonment, and malicious prosecution claims also preclude summary judgment on Plaintiff's IIED claim. Whether Defendants' conduct was extreme and outrageous depends

on both the Defendants' behavior and the Plaintiff's behavior that triggered Defendants' response. There is a genuine dispute of material fact regarding whether Plaintiff only questioned the officer's directions or also struck the officer and attempted to flee repeatedly. And, although it is undisputed that the Defendant Officers battered Plaintiff, the extent of the battery is unclear. Thus, although Plaintiff ultimately may not succeed in this "'rarely viable'" claim, a dispute of material fact exists as to the facts that would establish whether Defendants' conduct was extreme and outrageous. Therefore, Defendants' Motion for Summary Judgment as to Count IX as it pertains to the Defendant Officers IS DENIED.[10]

### 6. Summary Judgment as to Count V

In Count V, Plaintiff claims that Defendants violated Article 24 of the Maryland Declaration of Rights by "maliciously, willfully, wantonly, unlawfully and intentionally restrain[ing] the Plaintiff by placing him in handcuffs," thereby depriving Plaintiff of his liberty, when they lacked "provocation, probable cause, reasonable or articulable suspicion, or a good faith basis." Compl. ¶ 31. Defendants argue that they are entitled to summary judgment on this count because "the Defendant Police Officers had abundant justification for arresting the Plaintiff" and "probable cause existed to arrest Plaintiff." Defs.' Mem. 11. As discussed above, disputes of material fact exist as to whether Defendants had either legal justification or probable cause for Plaintiff's arrest. Therefore, Defendants' Motion for Summary Judgment as to Count V IS DENIED.

---

[10] As discussed previously, Defendants' Motion for Summary Judgment as to Count IX as it pertains to the County is granted.

## III.    CONCLUSION

Defendants' Motion for Summary Judgment IS GRANTED IN PART AND DENIED IN PART.  Specifically, Defendants' Motion IS DENIED as to all claims against the Defendant Officers.  With regard to the claims against the County, Defendants' Motion is GRANTED as to Counts II, III, IV, VII, IX and X.  Plaintiff IS DIRECTED to file a brief on the viability of Counts I and VIII against the County, not to exceed ten pages, by June 30, 2014.  Defendants may file a reply by July 14, 2014.  If Plaintiff does not file a brief on or before June 30, 2014, I will grant summary judgment in the County's favor on Counts I and VIII, for the reasons stated in this Memorandum Opinion.  Thus, Count V, VI and, if the briefing provides a basis, Counts I and VIII, are the only counts that remain against the County.

Plaintiff's Motion to Amend to plead satisfaction of the LGTCA notice requirement, provided that the facts support such an amendment, IS GRANTED.  Plaintiff may file an amended complaint on or before June 23, 2014.

The denial of summary judgment as it pertains to the claims against the Defendant Officers in Counts II, III, IV, V, VI, IX, and X and the claims against the County in Counts V and VI is without prejudice to submission of a second motion for summary judgment within thirty days of Plaintiff's Amended Complaint, if he files one, or thirty days from the date of this Memorandum Opinion, if Plaintiff does not amend.  The second motion for summary judgment may rest only on Plaintiff's failure to comply with the LGTCA, should Defendants have support for such an assertion.

A separate order shall issue.

Dated: <u>June 9, 2014</u>                           <u>            /S/            </u>
                                        Paul W. Grimm
                                        United States District Judge

lyb