**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| FRANZ BUTLER, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Case No.: PWG-13-883 |
| | * | |
| WILLIAM WINDSOR, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Franz Butler brought a 42 U.S.C. § 1983 action, with related state law claims, against Prince George's County, Maryland (the "County") and County Police Officers William Windsor and Richard Reynolds, based on his arrest on June 7, 2012. Am. Compl., ECF No. 36. I granted summary judgment in the County's favor on all but Plaintiff's claims for violations of the Maryland Declaration of Rights, Articles 24 and 26. ECF Nos. 30, 31. Further, I denied the individual defendants' motions for summary judgment on all counts. *Id.* At the end of a three-day trial, the jury returned a verdict in favor of Windsor and against Butler on all outstanding counts, and in Butler's favor and against Reynolds and the County on all outstanding counts. Order of Jmt., ECF No. 58. Specifically, Plaintiff was awarded $50,845.00 in compensatory damages against Reynolds and the County, as well as punitive damages against Reynolds in the amount of $100,000.00 with respect to his § 1983 claim and $50,000.00 with respect to his claims for violations of Articles 24 and 26 of the Maryland Declaration of Rights and for false arrest, false imprisonment, assault, battery, and malicious prosecution. *Id.*

Defendant Reynolds filed a Motion for a New Trial, "or, alternatively, remittitur of the punitive damages awards," arguing that "the awards are grossly excessive and violate Reynolds' due process rights guaranteed him under the Fifth Amendment to the U. S. Constitution," such that they "result in a miscarriage of justice."  Mot. 1, ECF No. 62; Mem. 1, 4, ECF No. 62-1.[1] Because a total award of punitive damages in the amount of $100,000.00 with respect to Plaintiff's § 1983 claim and state law claims is reasonable and does not violate Officer Reynolds's due process rights, I will deny Defendant's motion for a new trial as to punitive damages in that amount, but grant his motion for *remittitur* of the punitive damages awarded in excess of that amount.  And, because I find that the additional punitive damages awarded on Plaintiff's state law claims are excessive under the circumstances, I will afford the Plaintiff the opportunity to elect either to accept a total punitive damages award in the amount of $100,000.00, or to decline to accept this reduced amount,  in which case I will order a new trial as to punitive damages alone.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

At the time of the June 7, 2012, incident, Butler was outside with two friends and "had a brown paper bag in his hand that was ultimately determined to contain chips and a soda."  Stip., Pre-Trial Order 4, ECF Nos. 44, 46.  Based on the fact that Butler was drinking a concealed beverage, *id.*, and, in Officer Reynolds's experience, paper bags were used to conceal alcohol when it was illegally consumed in public, Officer Reynolds approached Plaintiff and searched him, then asked him to sit on the ground.  Notably, Butler did not initiate the interaction with Officer Reynolds.

---

[1] Plaintiff opposed the motion.  ECF No. 63.  Reynolds has not filed a reply, and the time for doing so has passed.  *See* Loc. R. 105.2(a).  A hearing is not necessary.  *See* Loc. R. 105.6.

Evidence at trial showed that, when Butler did not comply immediately with the command to sit down, Reynolds, who "was bigger than [Plaintiff,] came at [him] full throttle like a football tackle" and "tackled [him] to the ground," causing him to experience "[p]ain all over [his] back" and "all over [his] total body."  Trial Tr. 12:10–13:5, Def.'s Mem. Ex. A, ECF No. 62-2.  Photographic evidence showed that one of Plaintiff's eyes was completely swollen shut from Officer Reynolds punching him in the face.  According to Plaintiff, he sustained injuries including "headaches," "contusions," and "skin irritation . . . on [his] right arm and [his] ankle" that healed in "[a]bout two months."  Trial Tr. 11:1–10, 14:11–12, Def.'s Mem. Ex. B, ECF No. 62-3.  During those two months, he "was taking Percocets and [he] was taking Motrin, 800 milligrams" for the pain, as well as "Amoxicillin for something like infection, so it wouldn't get infected and things like that."  *Id.* at 11:11–16.  Additionally, he testified that, when the trial occurred in July 2015, he still had a scar by his eye, "a little ache" in his foot, his "back [was] hurting," and his "head still [was] hurting and dazed."  *Id.* at 61:8–62:2.  Plaintiff's medical records and photographs taken immediately after his arrest indicate that he suffered a laceration to his head and face.  Ft. Washington Med. Ctr. Emergency Registration, Tr. Ex. 6; Photographs, Tr. Ex. 15. Plaintiff also claimed emotional injury from "public humiliation" and having "no contact with his mother for over two months while his body healed."  Pl.'s Opp'n 6.

The jury awarded Plaintiff $50,845.00 in compensatory damages, which included $50,000.00 in non-economic damages, suggesting a finding of emotional injury. The jury also awarded punitive damages against Reynolds in the amount of $100,000.00 on Plaintiff's § 1983 claim and $50,000.00 on Plaintiff's state-law claims.

## II.      STANDARD OF REVIEW

Fed. R. Civ. P. 59(a)(1)(A) governs motions for new trial following a jury trial.   It provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."   Whether to grant a new trial "rests within the sound discretion of the trial court but such discretion must not be arbitrarily exercised."   *City of Richmond v. Atl. Co.*, 273 F.2d 902, 916 (4th Cir. 1960); *see Atkinson Warehousing & Distrib., Inc. v. Ecolab, Inc.*, 115 F. Supp. 2d 544, 546 (D. Md. 2000), *aff'd*, 15 F. App'x 160 (4th Cir. Aug. 9, 2001).   The Court must "'grant a new trial[ ] if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'"   *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (quoting *Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).

The court considers the "miscarriage of justice" prong when a plaintiff challenges the amount of punitive damages awarded, because "[t]he jury's determination of the amount of punitive damages . . . is not a factual determination . . . but is, rather, an almost unconstrained judgment or policy choice about the severity of the penalty to be imposed."   *See Atlas Food Sys.*, 99 F. 3d at 594. Although it is based on "the jury's underlying factual determinations about the defendant's conduct[,] . . . the factual record provides no direct foundation for the amount of punitive damages."   *Id.*   Therefore, "a court cannot generally test the amount of a punitive damage award against record facts."   *Id.*   Indeed, "policy-related elements—e.g., the likelihood that an award will deter the defendant or others from engaging in similar conduct—are . . . more

4

appropriately decided by the trial judge," whose "unique vantage point and day-to-day experience with such matters lend expertise and consistency." *Id*.

When, as here, the challenge to the punitive damages award is that the amount of the award violates the defendant's due process rights, the court considers three factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 603 (D. Md. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). This analysis "ensure[s] that defendants have fair notice about the potential penalty they face for engaging in prohibited conduct"; without this notice, "the punitive damages award violates due process." *Id*. at 604.

## III.   PUNITIVE DAMAGES AWARD

### A.  Degree of Reprehensibility

The first factor, that is, the degree of reprehensibility, is "'[t]he most important indicium of the reasonableness of a punitive damages award.'" *Wallace*, 861 F. Supp. 2d at 604 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). To determine how reprehensive the defendant's conduct was, the court considers

> [W]hether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id*. (quoting *State Farm*, 538 U.S. at 419).

Here, so far as the evidence at trial established, the conduct was "an 'isolated incident,'" which militates against a finding of very reprehensible conduct, as "other courts have found [this

factor] highly persuasive." *Id.* at 605.   But, Officer Reynolds initiated the contact when Plaintiff

was not behaving disruptively or breaching the peace, and "'the harm caused was physical as

opposed to economic." *See State Farm*, 538 U.S. at 419; *Wallace*, 861 F. Supp. 2d at 604.

Whether Plaintiff was financially vulnerable is not relevant.   Moreover, the jury was instructed

that, to award punitive damages on Plaintiff's state law claims, it first had to find "actual malice,

that is, a sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure,

or ill will," by "clear and convincing evidence," and, to award punitive damages on Plaintiff's

§ 1983 claim, it first had to "find by a preponderance of the evidence that the Defendants acted

intentionally and with a callous or reckless disregard or indifference toward Mr. Butler's

constitutional rights."   The jury also was instructed that the relevant "constitutional rights" under

state and federal law "concern[ed] the use of force."   Having been so instructed, the jury awarded

punitive damages on the federal and state claims, and therefore necessarily found that Defendant

acted with "intentional malice" and "an indifference to or a reckless disregard of [Plaintiff's]

health or safety" when he harmed Plaintiff through the use of excessive force. *See State Farm*,

538 U.S. at 419; *Wallace*, 861 F. Supp. 2d at 604.   This Court "must accept the underlying facts

found by the jury." *Wallace*, 861 F. Supp. 2d at 604.   Weighing these factors suggests a high

degree of reprehensibility in Reynolds's conduct. *See id.*

### B.  Ratio of Comparative and Punitive Damages

As noted, the jury awarded Plaintiff $50,845.00 in compensatory damages, and a

combined punitive damages award of $150,000.00, or just under three times the amount of

compensatory damages awarded.   In *Pacific Mutual Life Ins. Co. v. Haslip*, where the defendant

had committed insurance fraud, the Supreme Court affirmed as constitutional an award of

punitive damages that was "more than 4 times the amount of compensatory damages," and

"more than 200 times the out-of-pocket expenses of respondent Haslip," as well as "much in excess of the fine that could be imposed for insurance fraud," although imprisonment was also a possible criminal penalty.  499 U.S. 1, 4–6, 23–24 (1991).  Contrary to Defendant's assertions, *see* Def.'s Mem. 10–11, criminal penalties are no longer relevant, as the Supreme Court eliminated that factor in *State Farm Mutual Automobile Insurance Co. v. Campbell*, deeming criminal penalties to have "less utility" in "determin[ing] the dollar amount of the award" than in determining "the seriousness with which a State views the wrongful action."  538 U.S. 408, 428 (2003).

The *Campbell* Court did, however, consider the compensatory damages award and reiterate the "4–to–1 ratio" of acceptable punitive damages compared to compensatory damages, noting that it had "cited that 4–to–1 ratio again" in *BMW of North America v. Gore*, 517 U.S. 559, 581 (1996).  538 U.S. at 425.  The Court further observed that, in *Gore*, it had "referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish."  *Id*.  It stated that, "[w]hile these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, or . . . 145 to 1."  *Id.* (citing *Gore*, 517 U.S. at 581–82 & n.33).

Notably, in *Haslip*, as here, the jury was instructed that punitive damages serve to punish and to deter the defendant but not to compensate the plaintiff; should "take into consideration the character and the degree of the wrong as shown by the evidence"; and need not be awarded should the jury choose not to award them.  499 U.S. at 19.  In this case, the jury's discretion was further constrained by the requirement that it find that Defendants acted with "actual malice" by

"clear and convincing evidence" before awarding damages on Plaintiff's state law claims, and that Defendants "acted intentionally and with a callous or reckless disregard or indifference toward Mr. Butler's constitutional rights" before awarding punitive damages on Plaintiff's § 1983 claim.   Under these circumstances, punitive damages that are three times as great as compensatory damages are in line with Supreme Court precedent.  *See Haslip*, 499 U.S. at 23–24 (awarding punitive damages four times greater than compensatory damages); *Gore*, 517 U.S. at 574, 580–81 (reasoning that punitive damages should not be more than ten times greater than compensatory damages and concluding that punitive damages with 500:1 ratio to compensatory damages was "grossly excessive"); *Campbell*, 538 U.S. at 425–29 (noting that there was "a presumption against an award that has a 145–to–1 ratio," and reversing the punitive damages award, which was 145 times greater than the compensatory damages, "in light of the substantial compensatory damages awarded (a portion of which contained a punitive element)," but also observing that "ratios greater than those [the Supreme Court has] previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages' . . . 'or the monetary value of noneconomic harm might have been difficult to determine'").

### C.  Comparable Cases

Finally, a review of comparable cases is informative.   Although an analysis of the punitive damages awards in these cases cannot be done with mathematic precision, because the facts of each case are different, even when similar causes of action are brought, the range of the awards imposed and affirmed in other cases creates parameters for an award for which defendants under these facts would have reasonable notice.   Within that range, it is for the jury to decide the appropriate line, and the Court must be respectful of the jury's determination while

mindful that the punitive damages award must comply with constitutional due process.  *See Wallace v. Poulos*, 861 F. Supp. 2d 587, 604 (D. Md. 2012).

*Francis v. Johnson*, 101 A.3d 494 (Md. Ct. Spec. App. 2014), *cert. denied*, 113 A.3d 625 (2015), is informative.  There, the defendant police officers took the plaintiff "from Baltimore in a police van, assault[ed] him, br[o]k[e] his phone, and then dropp[ed] him off in Howard County, in the rain, without shoes, socks or a way home."   The jury awarded $465,000 in total compensatory damages and $35,000 in total punitive damages against three defendant officers, with respect to the four claims that were submitted to the jury.  *Id*. The court found the total compensatory damages award excessive and struck the $1,000 punitive damages award against one of the officers.  *Id*. Plaintiff agreed to a *remittitur*, resulting in total compensatory damages of $300,000 and total punitive damages of $34,000.  *Id.* The Court of Special Appeals affirmed, noting that defendants failed to preserve their challenge to the punitive damages award.  *Id*. at 510.  Additionally, in *French v. Hines*, 957 A.2d 1000, 1006–07, 1013, 1016 (Md. Ct. Spec. App. 2008), the Maryland Court of Special Appeals affirmed awards of $50,000 in compensatory damages and $10,000 in punitive damages to Ms. Hines for the defendant police officer's use of excessive force in arresting her in a case in which she testified that the officer pointed a gun at her, made her handcuffs "too tight," and "smashed [her] head into the side of [her] truck," all of which the officer denied. She testified at trial that the handcuffs made her wrists bloody and that, because of the incident, her face still "bother[ed]" her.  *Id.* at 1007.

In *McCollum v. McDaniel*, 136 F. Supp. 2d 472, 474 (Md. 2001), McCollum brought suit under § 1983 and related state law claims "for an assault committed against him by Prince George's County police officers in the course of an arrest for alleged traffic violations," resulting in the loss of an eye and permanent injury to a hand.  The jury awarded him compensatory

damages of more than $3.7 million, including $3.5 million in non-economic damages, and punitive damages of $150,000 as to each of two officers and $100,000 as to a third officer. *Id*. The Court "reduce[d] the award for non-economic damages to $1.25 million and grant[d] a new trial *nisi remittitur* at the plaintiff's option." *Id*. at 477. As for punitive damages, the Court considered the minimal amount of possible criminal sanctions (the Supreme Court not yet having decided *State Farm*, 538 U.S. at 428, in which it held that the amount of possible criminal damages has minimal utility in assessing the constitutional propriety of a punitive damages award), and the defendants' financial resources.[2] On those bases, the Court "reduce[d] the punitive damage awards to $50,000 each as to Cpl. McDaniel and Cpl. Hubbard, and $35,000 as to Cpl. Murphy, and grant[ed] a new trial *nisi remittitur* at the plaintiff's option." *Id*. at 478.

*Gregg v. Ham*, 678 F.3d 333, 338 (4th Cir. 2012), and *Prince George's County, Maryland v. Longtin*, 988 A.2d 20, 25 (Md. Ct. Spec. App. 2010), *aff'd*, 19 A.3d 859 (Md. 2011), also help establish the range of punitive damages for which Defendants in this case would have notice, although neither is on point as neither involved a physical assault. In *Gregg*, the jury awarded the plaintiff nominal damages and $30,000 in punitive damages on her § 1983 claim against a bail bondsman for unconstitutional entry into her home. Without making a constitutional challenge, the defendant appealed the district court's denial of his request for a *remittitur* or new trial on punitive damages. *Id*. at 343. The Fourth Circuit affirmed, noting that the district court "found that the punitive damages award bore a reasonable relationship to the compensatory damages." *Id*. at 344. In *Longtin*, 988 A.2d 20, the plaintiff was falsely arrested and incarcerated for eight months, and when he filed suit under § 1983, the jury awarded "$5.2 million in compensatory damages against the County" and $350,000 in punitive damages against

---

[2] In the pending case, Defendants did not introduce evidence at trial regarding their financial resources, so that information is not available.

one defendant.[3] *Id*. at 25.  The court reduced the compensatory damages by $25,000 and reduced Herndon's punitive damages to $50,000. *Id*. at 26.  The Court of Special Appeals affirmed the punitive damages ruling. *Id*. at 48.

In *Wallace v. Poulos*, in which a father and his minor daughter claimed violations of their constitutional rights when police officers restrained the father and seized the daughter while serving a temporary protective order, this Court reduced punitive damages awards of $500,000 to the father and $2.5 million to the daughter to $20,000 and $125,000, respectively.  There, neither plaintiff was harmed physically, but the daughter, who was three at the time, was "emotionally distraught" and screamed and cried as she was taken from her father. *Id*. at 592–93.  The Court observed that "[t]he jury awarded Wallace $1 in nominal damages, but $500,000 in punitive damages," and it awarded the daughter $3,000 in compensatory damages and $2.5 million in punitive damages, "more than 833 times her compensatory award." *Id*. at 606.  The Court compared the case before it to three other "analogous § 1983 cases" with "far smaller [punitive damages] awards" to conclude that "the substantial punitive damages awards to Plaintiffs violated due process."  *Id*. at 606–07.  In one case, *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988), the § 1983 plaintiff was arrested without probable cause, detained for two and a half hours but not physically harmed, and investigated by the State Department of Special Services with regard to her parental fitness.  *Id*. at 955.  The defendant moved for a new trial, arguing that the jury's award of $112,000 in compensatory damages and $21,000 in punitive damages was excessive, but not challenging the constitutionality of the punitive damages award.  *Id*. at 955,

---

[3] The jury also awarded $275,000 in punitive damages against each of two other defendants, but the court "vacated the punitive damage awards assessed against [them] because of insufficient evidence of actual malice." 988 A.2d at 26.

959.   The United States District Court for the Eastern District of North Carolina denied the motion, and the Fourth Circuit affirmed.  *Id.*

The other two cases discussed in *Wallace* were outside the Fourth Circuit and Maryland, and therefore are not binding precedent with regard to either the § 1983 or state law claims.  In *Mendez–Matos v. Municipality of Guaynabo*, 557 F.3d 36 (1st Cir. 2009), one plaintiff was detained for about two hours by police officers, at the mayor's directive, following a dispute over a construction contract that the defendant's company had with the city.  *Id*. at 43–44.  There was no evidence of physical harm, but the plaintiff suffered "a real and serious threat of violence" as well as insults.  *Id*. at 53.  The jury awarded punitive damages award of $350,000 on the plaintiff's § 1983 claim, and the First Circuit affirmed the trial court's reduction to $35,000 "[b]ecause the Mayor lacked fair notice that his conduct could expose him to a penalty of this magnitude."  *Id*. at 56.  The First Circuit observed that it had "affirmed large punitive awards where the plaintiff suffered significant physical injury," such as "a punitive damages award of over $1 million, the plaintiff was thrown to the ground and repeatedly punched in the head," and "approved large awards in the absence of violence [where] the conduct at issue was … intentional or malicious," such as "$250,000 for politically motivated discrimination[,] … $400,000 for violations of state discrimination law," and "$285,000 for violations of Title VII and state law."  *Id*.  Although First Circuit holdings do not necessarily put Prince George's County police officers on notice of possible punitive damages awards, they can inform this Court's decision as to what is reasonable.

In *Mendez v. County of San Bernadino*, 540 F.3d 1109, 1122 (9th Cir. 2008), the jury had awarded nominal damages and punitive damages of $250,000 against a police officer who locked the plaintiff in a police car, drove her to police station, and questioned her without probable

cause while her home was illegally entered and searched.  The Ninth Circuit reduced the punitive

damages to $5,000, based on the ratio of nominal damages to punitive damages.  *Id*. Yet, *Arizona*

*v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014), in which the Ninth Circuit held that the ratio of

nominal damages to punitive damages should not have been considered, overruled *Mendez* after

the *Wallace* opinion issued.

The  Maryland,  United  States  District  Court  for  the  District  of  Maryland,  and  Fourth

Circuit cases provide a reasonableness range of $10,000 to $125,000 in punitive damages, as

summarized in the following chart.

| Case | Sustained compensatory damages | Sustained punitive damages |
|---|---|---|
| *Francis v. Johnson*, 101 A.3d 494 (Md. Ct. Spec. App. 2014) | $300,000 | $34,000 |
| *French v. Hines*, 957 A.2d 1000 (Md. Ct. Spec. App. 2008) | $50,000 | $10,000 |
| *McCollum v. McDaniel*, 136 F. Supp. 2d 472, 474 (Md. 2001) | $2,462,670 | $50,000 each as to two officers; $35,000 as to a third officer |
| *Gregg v. Ham*, 678 F.3d 333 (4th Cir. 2012) | nominal damages | $30,000 |
| *Prince George's County, Maryland v. Longtin*, 988 A.2d 20 (Md. Ct. Spec. App. 2010) | over $5 million | $50,000 |
| *Wallace v. Poulos*, 861 F. Supp. 2d 587 (D. Md. 2012) | $1 (father – nominal damages) | $20,000 |
|  | $3,000 (daughter) | $125,000 |
| *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988) | $112,000 | $21,000 |

Significantly, only *Francis*, *French*, and *McCollum* involved circumstances in which the

plaintiff suffered physical harm.  And, although the plaintiffs in *Francis* and *Longtin* received

only  $34,000 – $50,000  in  punitive  damages  from  any  one  defendant,  their  compensatory

damages were substantial.  Moreover, in reducing the jury's punitive damages award, *McCollum*

considered factors such as criminal penalties and the defendants' salaries that are not relevant

here. In *Sevigny*, as well, the plaintiff received a much greater compensatory award. It is also noteworthy that the minor plaintiff in *Wallace* was awarded $125,000 in punitive damages with compensatory damages of only $3,000. The father in *Wallace*, also, received a relatively small amount in punitive damages, but his punitive damages award had been reduced based on its ratio to the $1 nominal damages he received, in reliance on a non-binding Ninth Circuit opinion that since has been overruled. *See Mendez v. Cnty. of San Bernadino*, 540 F.3d 1109, 1122 (9th Cir. 2008), *overruled by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014).

Here, the facts involved violent, unprovoked conduct resulting in serious, painful physical injury, which is more egregious than the conduct at issue in many of the other cases. And, the $50,845.00 in compensatory damages is much less than the compensatory damages in *Francis*, *Longtin*, or *Sevigny*. Additionally, the ratio of punitive to compensatory damages is much smaller in this case than in *Wallace*. A $100,000.00 punitive damages award on the § 1983 claim is both reasonable and within the range of awards for which Defendant had "fair notice." *See Wallace*, 861 F. Supp. 2d at 604.

After imposing a punitive damages award of $100,000.00 on the § 1983 claim on the special verdict sheet, the jury awarded another $50,000.00 in punitive damages on the state law claims for which Officer Reynolds was found liable, namely, violations of Article 24 and 26 of the Maryland Declaration of Rights, false arrest, false imprisonment, assault, battery, and malicious prosecution. ECF No. 54. As discussed previously, the elements for punitive damages under federal and state law are not identical. Rather, the punitive damages for § 1983 required only a finding that Officer Reynolds "acted intentionally and with a callous or reckless disregard or indifference toward Plaintiff's constitutional rights," whereas the punitive damages for the state law claims set forth a higher standard, requiring additional proof for a finding by "clear and

convincing evidence that Defendant Richard Reynolds acted with actual malice." *Id.* The award of $50,000 could be viewed as an additional penalty for Reynolds' actions in violation of state law and the more egregious conduct required for the finding for punitive damages under state law. Therefore it is possible that the jury intended this to be additional to, and not duplicative of, the $100,000.00 award. But, because the state law claims and § 1983 claims involved the same underlying conduct by Officer Reynolds, the additional award also could be viewed as impermissibly duplicative. *See Martin v. Harris*, 560 F.3d 210, 221 (4th Cir 2009) ("[T]here may be no duplication in the final award . . . ."); *Vales v. Preciado*, 809 F. Supp. 2d 422, 428–29 (D. Md. 2011) ("[A] party may not recover twice for a single injury, even if the party asserts multiple theories of recovery." (citing *Montgomery Ward & Co. v. Cliser*, 298 A.2d 16 (Md. 1972))).

Considering Defendant Reynolds's actions and the fact that the same conduct underlay the federal and state law claims, I find that a punitive damages award of $50,000.00 in addition to the $100,000.00 award is constitutionally excessive. *See Wallace*, 861 F. Supp. 2d at 604. Therefore, the award would "'result in a miscarriage of justice.'" *See Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001). I therefore find that no further punitive damages are justified for Officer Reynolds's violations of the state law claims, given that the $100,000.00 punitive damages award on the § 1983 suffices to penalize and deter the same underlying conduct. Therefore, the $50,000.00 award on the state law claims should be reduced to $0.00, for a total award of $100,000.00. The testimonial and photographic evidence, along with the range of awards established in other cases, amply support this award.

## IV.    REMEDY

"If a punitive damages award is unconstitutionally excessive, it is [the court's] obligation to order a remittitur or award a new trial." *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 376 (4th Cir. 2008) (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998)).  In *Cline*, the Fourth Circuit defined *remittitur* as "'a process, dating back to 1822, by which the trial court orders a new trial *unless the plaintiff accepts a reduction in an excessive jury award*.'"  144 F.3d at 305 (quoting *Atlas Food Sys.*, 99 F.3d at 593).  Thus, if a court determines that the amount of damages is unconstitutionally excessive, as is the case here, the court cannot simply reduce the award, but rather must order a new trial unless the plaintiff accepts damages in a specified, reduced amount in lieu of the new trial.  *Fed. Express Corp.*, 513 F.3d at 376; *Cline*, 144 F.3d at 305; *Atlas Food Sys.*, 99 F.3d at 593; Wright, Miller, & Kane, 11 Fed. Prac. & Proc., Civil 2d § 2820 (1995)).  Indeed, the Fourth Circuit has held that it would violate a plaintiff's Seventh Amendment right to a jury trial if the trial court ordered punitive damages in a set, reduced amount without offering the plaintiff a new trial.  *See Defender Indus., Inc. v. Nw. Mut. Life Ins. Co.*, 938 F.2d 502, 507 (1991) ("Several other circuits have, upon finding a punitive damage jury award excessive, ordered it reduced to a sum certain; however, these decisions did not address the constitutional right to a jury trial. Indeed, in these cases the appellate court reduced the verdicts without any explanation or discussion of their authority to do so. On the other hand, the two Courts of Appeals that have considered whether a district court may reduce the amount of punitive damages awarded by a jury and enter judgment in that amount without providing a plaintiff an opportunity to accept a *remittitur* or receive a new trial have concluded that the right to a jury determination of the amount of punitive damages is guaranteed by the seventh amendment.  An assessment by a jury of the amount of punitive damages is an inherent and

fundamental element of the common-law right to trial by jury. Therefore, we hold that the seventh amendment guarantees the right to a jury determination of the amount of punitive damages.") (citations omitted).

More recently, this Court has reduced the punitive damages award without offering a new trial.  *See Wallace*, 861 F. Supp. 2d at 607–08; *Snyder v. Phelps,* 533 F. Supp. 2d 567, 575, 592 (D. Md. 2008), *reversed on other grounds by* 580 F.3d 206 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011).  In both *Wallace* and *Snyder*, the Court relied on *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999), in which the Eleventh Circuit held that it had a "mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.'"  Yet, neither time did this Court distinguish the line of binding Fourth Circuit precedent to the contrary or address the Seventh Amendment issue. Rather, in *Wallace*, the Court observed:

> The Fourth Circuit has not squarely reached this issue [of whether a new trial is required]. Instead, the court indicated "it was not clear to us that, for example, post-*BMW*, the Court would necessarily conclude that a plaintiff would be denied his Seventh Amendment jury right unless he were offered a completely new trial (or at least a completely new trial on damages) following an appellate decision that damages beyond a specified amount would be excessive *as a matter of constitutional law*." *In re Bd. of Cnty. Supervisors of Prince William Cnty., Va.*, 143 F.3d 835, 840 (4th Cir.1998).

861 F. Supp. 2d at 607 n.21 (emphasis in *Bd. of Cnty. Supervisors*).  It is true that, in *BMW*, the Supreme Court said:

> Whether the appropriate remedy [for an unconstitutionally-excessive punitive damages award] requires a new trial or merely an independent determination by the Alabama Supreme Court of the award necessary to vindicate the economic interests of Alabama consumers is a matter that should be addressed by the state court in the first instance.

517 U.S. at 586.

However, in *Board of County Supervisors*, as quoted above, the Fourth Circuit was reviewing its reasoning in an earlier, unpublished opinion in the same case, in which it had issued a writ of mandamus to the district court, directing the trial court to enter a reduced award of punitive damages as a final judgment; the Supreme Court since had reversed and remanded the case to the Fourth Circuit in *Hetzel v. Prince William Cnty., Va.*, 523 U.S. 208 (1998). On remand, the Fourth Circuit noted that it had acknowledged, but "did not address the Seventh Amendment issue" in its earlier opinion. *Bd. of Cnty. Supervisors*, 143 F.3d at 842. It then noted the *Hetzel* holding that an appellate court's "directive that the district court enter final judgment on the recalculated amount [of damages], without offering the plaintiff the option of new trial, violated the Seventh Amendment," and "following an *appellate court's* reversal of a district court's denial of a motion to set aside a jury's damages award as excessive (or, as here, modification of a district court's reduction order), the plaintiff is entitled to the same procedure to which he would have been entitled following a *trial court's* reduction of the jury's award," that is, "the plaintiff is entitled to a new trial on the issue of damages alone." *Id.* (emphasis in *Bd. of Cnty. Supervisors*). The Fourth Circuit stated that its "*obligation is to ensure that the plaintiff receives this right of conditional remittitur, as defined by the Supreme Court.*" *Id.* (ordering the district court to recalculate damages and "offer the plaintiff the choice of accepting the reduced award or proceeding to a new trial").

In so holding, the Fourth Circuit did not carve out an exception for punitive damages found to be unconstitutionally excessive, despite its observation that, pre-*Hetzel*, "it was not clear" whether it would violate the Seventh Amendment to reduce damages that were determined to "be excessive *as a matter of constitutional law*" without affording the plaintiff a new trial. *Id.* at 840. Nor did it do so in its later opinions in *Federal Express Corp.*, 513 F.3d at 376 (holding

expressly, with regard to an "*unconstitutionally* excessive" punitive damages award, that the Fourth Circuit was under an "obligation to order a remittitur or award a new trial" (emphasis added)) and *Cline*, 144 F.3d 294 (not addressing constitutionality of award).  Therefore, in light of the existing Fourth Circuit precedent, I will order a new trial, limited to the issue of punitive damages, unless Plaintiff accepts total punitive damages of $100,000.00.  *See Bd. of Cnty. Supervisors*, 143 F.3d at 842 (new trial can be ordered as to "damages alone").

## **ORDER**

Accordingly, it is, this <u>22nd</u> day of <u>October</u>, <u>2015</u>, hereby ORDERED that

1.  Defendant Reynolds's Motion for a New Trial, "or, alternatively, remittitur of the punitive damages awards," ECF No. 62, IS GRANTED IN PART AND DENIED IN PART, as follows:

    a.  Plaintiff may elect to accept a total of $100,000.00 punitive damages on the § 1983 claim, and $0.00 punitive damages on his state law claims, or

    b.  If Plaintiff does not accept this award, I will order a new trial as to punitive damages.

2.  Plaintiff shall notify the Court of his decision by November 23, 2015.  A failure to do so will be taken as consent to reduction of his total punitive damages award to $100,000.00.

_____/S/_____<br>
Paul W. Grimm<br>
United States District Judge

lyb